UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Devon Swan Leon (2017-0218036), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19 cv 4352 |
| Officer Phillips, | ) Judge John Robert Blakey |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Devon Swan Leon, a detainee in the custody of the Cook County Department of Corrections (CCDOC), sued Defendant Officer Phillips under 42 U.S.C. § 1983 for allegedly failing to protect him from an assault by a fellow detainee. [1]. Defendant now moves for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. [26]. For the reasons explained below, this Court grants Defendant's motion.

**I.  Background**

This Court takes the following facts from Defendant's statement of facts [28], to which Plaintiff responded, [31]. Plaintiff, however, only responded to paragraphs 14, 21–23, 27, and 28 of Defendant's statement of facts, *see* [31] at 2, so this Court deems the remainder of Defendant's facts admitted, *see* [28] at ¶¶ 1–13, 15–20, 24–26, 29; *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

1

### A. The Altercation

Plaintiff has been detained in CCDOC custody since February 18, 2017. [28] at ¶¶ 1, 7. Defendant has at all times relevant served as a correctional officer at CCDOC for the Cook County Sheriff's Office. *Id.* at ¶ 2.

On April 2, 2019, Plaintiff was awaiting a court appearance in a CCDOC bullpen when he got into a physical altercation with a fellow detainee, Shawn Stubblefield. *Id.* at ¶ 9. According to the incident report from this altercation, the video footage documenting the altercation showed that Stubblefield walked toward Plaintiff and began hitting and kicking him repeatedly. [28-2] at 2. The incident report also lists Defendant Officer Phillips as a witness, and states that when Defendant went to pull Plaintiff from the bullpen for court, he noticed that Plaintiff "had bruises and a bone sticking out." [28-2]. Officers took Plaintiff for medical treatment following this altercation. [28] ¶ 10.

Two days later, on April 4, 2019, Plaintiff filed a grievance regarding the altercation. *Id.* at ¶ 11; [28-3] at 17. On the grievance form, Plaintiff stated:

> When I was going to court on 4-2-18, I was assaulted by another Inmate. All which happen in the receiving bullpen waiting to go to the bridge. (view the camera) I was in so much pain, all I wanted to do was see a doctor. But I would like to press charges, on the man who assaulted me on my way to court. I'm asking that someone please help me. Thank you.

[28-3] at 17. In a box labeled "name and/or identifier(s) of accused," Plaintiff wrote "Officer Phills [sic] knows the Inmate Name and the camera show [sic] Inmate who Assaulted me." *Id.* In another box labeled "name of staff or inmate(s) having

2

information regarding this complaint," Plaintiff wrote "Officer Phills [sic] was there." *Id.*

On April 10, 2019, Plaintiff received a response to his grievance on an Inmate Grievance Response/Appeal Form. [28] at ¶ 12; [28-3] at 18. The response stated that investigators had been notified and a disciplinary report had been forwarded. [28-3] at 18. Plaintiff did not appeal the grievance. [28] at ¶ 13.

## B. Grievance Process

CCDOC implements a formal grievance process, which requires inmates to file a grievance within fifteen days of the conduct or incident giving rise to the grievance and then appeal the grievance within 15 days of receiving a response. [28] at ¶ 16; [28-4] at 3. Instructions stating this information appear on the grievance and response forms themselves, as well as in the CCDOC's Inmate Information Handbook. [28] at ¶ 18. Plaintiff received the handbook in 2017 upon entry into CCDOC, *id.* ¶ 24, and he admits that he had the opportunity to read the handbook but did not do so, [28-6] at 17.

Plaintiff testified that he was diagnosed during third grade with a learning disability that makes reading and writing difficult for him; he received Social Security assistance as a result of this disability. *Id.* at 9. Plaintiff said the disability also makes it hard for him to focus such that he tends to lose interest when reading books after a couple of pages. *Id.* at 14. Plaintiff does, however, read books about entrepreneurship. *Id.* at 9. Plaintiff has never taken medication for the alleged learning disability. *Id.* at 14. Nor has he ever requested anything along the lines of

special education from CCDOC concerning the disability. *Id.* at 26. He testified that he has mentioned the disability to a CCDOC counselor, Ms. Mitchell, but did not discuss the details of the disability. *Id.* at 14–15.

Before the April 2019 altercation, Plaintiff filed other grievances and availed himself of the appeal process. For example, on October 14, 2018, Plaintiff filed a grievance about his mattress. [28-3] at 4. Plaintiff filed an additional unrelated grievance dated October 20, 2018. [28-6] at 13. On October 30, 2018, he received a response to his October 14 mattress grievance, after which he then filed a timely and proper appeal as necessary to exhaust his administrative remedies. [28-3] at 5. Plaintiff filed another grievance regarding a different matter on November 18, 2018, to which he received a response on December 6, 2018. *Id.* at 11–12.

Even though Plaintiff had previously filed and appealed grievances properly, he claimed that he did not appeal the grievance about his altercation with Stubblefield because he was unfamiliar with the appeals process. [28-6] at 13. Nevertheless, Plaintiff also testified that, after submitting the Stubblefield grievance, a fellow inmate called "Old School" informed him that he had to appeal the grievance. [28-6] at 14. When asked at his deposition whether he attempted to appeal the grievance after being told by "Old School" that he had to, Plaintiff responded that he did not feel it was necessary. *Id.*

Between May 2019 and September 2020, Plaintiff wrote and properly appealed seven grievances related to other issues. [28] at ¶ 26.

4

### C. Procedural History

Plaintiff filed suit against Defendant under 42 U.S.C. § 1983 in June 2019. [1]. His complaint alleges that Defendant failed to protect him by acting with deliberate indifference to a substantial risk of serious harm while Plaintiff was incarcerated under conditions posing such a risk, a violation of his right to be protected from violence under the Eighth and Fourteenth Amendments. *Id.*; *see also* [31] at 3–4. Plaintiff's original complaint also sued CCDOC for failure to protect and Sheriff Thomas J. Dart as the "head" supervisor, [1], but this Court dismissed these defendants when screening the complaint under 28 U.S.C. § 1915A because CCDOC is not a suable entity and because § 1983 does not allow *respondeat superior* liability, [9] at 2–3.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of demonstrating the absence of genuine disputes of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, this Court construes all "facts in the light most favorable to the non-moving party." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th

Cir. 2016) (citing *Rahn v. Bd. of Trs. of N. Ill. Univ.*, 803 F.3d 285, 287 (7th Cir. 2015); *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006)).

Where the non-moving party seeks to assert a genuine dispute of fact, the party "must support its assertion with particular materials in the record." *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014). A party cannot create a genuine dispute of material fact by merely contradicting his previous sworn testimony. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (collecting cases). The non-moving party must show a genuine issue for trial rather than simply introduce "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87; *see also Abrego v. Wilkie*, 907 F.3d 1004, 1011–12 (7th Cir. 2018).

### III. Analysis

Defendant has moved for summary judgment based upon Plaintiff's alleged failure to exhaust his administrative remedies before filing suit in this Court. [26]; [27]. Plaintiff opposes the motion. [31]. This Court first provides an overview of administrative exhaustion before moving to the merits of the parties' arguments.

#### A. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a)–(h) prohibits a prisoner from initiating any action related to prison conditions under § 1983 "until such administrative remedies as are available are exhausted." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting 42 U.S.C. § 1997e(a)).[1] Failure to exhaust

---

[1] Contrary to Plaintiff's argument, [31] at 3, the PLRA applies to detainees in CCDOC custody, *see, e.g., Hernandez v. Dart*, 814 F.3d 836, 838 (7th Cir. 2016).

6

administrative remedies constitutes an affirmative defense for which Defendant bears the burden of proof. *Id.*

To satisfy the exhaustion requirement, a prisoner "must take each of the steps prescribed" by the relevant correctional facility's rules governing grievances. *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020); *see also Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020); *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). The Supreme Court has emphasized that prisoners must "take advantage of all procedures that are actually available." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020) (first citing *Porter v. Nussle*, 534 U.S. 516 (2002); then citing *Booth v. Churner*, 532 U.S. 731 (2001)). A prisoner's subjective unawareness of a grievance procedure does not render that procedure unavailable; indeed, the "PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). To exhaust, a prisoner must give the prison "notice of, and an opportunity to correct, a problem." *Schillinger*, 954 F.3d at 996 (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). At a minimum, a grievance must provide notice to the prison of "the nature of the wrong for which redress is sought." *Id.* at 995 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

### B. Plaintiff Failed to Exhaust

In moving for summary judgment based upon Plaintiff's failure to exhaust administrative remedies, Defendant argues that: (1) Plaintiff's grievance regarding

7

the April 2019 altercation does not provide sufficient notice of the alleged conduct Plaintiff now complains of; (2) Plaintiff failed to appeal this grievance under the CCDOC's grievance procedures; and (3) Plaintiff's learning disability did not render him unable to exhaust his administrative remedies. [27] at 5–13. Given the undisputed record, this Court agrees that Plaintiff failed to exhaust, making summary judgment in Defendant's favor appropriate.

First, Plaintiff's grievance failed to alert the prison officials about nature of the alleged wrong—in this case, Defendant's alleged failure to protect him from Stubblefield's attack. On the grievance form, Plaintiff wrote in a box labeled "name and/or identifier(s) of accused" that "Officer Phills [sic] knows the Inmate Name and the camera show [sic] Inmate who Assaulted me"; in another box labeled "name of staff or inmate(s) having information regarding this complaint," Plaintiff wrote "Officer Phills [sic] was there." [28-3] at 17. The grievance does not, however, contain any description of Defendant's actions or inactions during the altercation; it merely details Plaintiff's assault by "another Inmate" and Plaintiff's desire to "press charges" "on the man who assaulted me on my way to court."

Plaintiff's grievance fails to alert prison officials to any failure to protect claim. Merely naming Phillips in a grievance does not serve to exhaust any and all remedies against him. *See, e.g.*, *Roberts v. Neal*, 745 F.3d 232, 235–36 (7th Cir. 2014) (observing that whether a prisoner includes a correctional facility employee's name on a grievance is not dispositive to the issue of proper notice); *see also, e.g.*, *Badley v. Granger*, No. 217CV00041JMSDLP, 2018 WL 3120638, at *7 (S.D. Ind. June 25,

8

2018) ("Merely naming Lieutenant Granger in a remedy does not serve to exhaust any and all claims that Mr. Badley may have against him."). The grievance only references Defendant's name as someone who might have information about the altercation and the identity of the attacker, Stubblefield. But absent any more specific accusation against Defendant as to his own actions or inactions, the reference to Defendant's name is simply "too vague" to alert CCDOC that Plaintiff had a complaint about Defendant's role in allegedly failing to protect Plaintiff from Stubblefield. *Gay v. Shawbecker*, No. 17 CV 50326, 2020 WL 1938841, at *6 (N.D. Ill. Jan. 16, 2020), *report and recommendation adopted*, No. 17 C 50326, 2020 WL 859478 (N.D. Ill. Feb. 21, 2020); *see also Bowers v. Dart*, 1 F.4th 513 (7th Cir. 2021) (affirming dismissal of unexhausted failure to protect claim alleging that numerous prison employees knew of the risk of attack and did nothing to protect plaintiff from the impending harm before it occurred where the grievance alleged that the correctional officer ignored him during the attack).

Even if Plaintiff's mere naming of Defendant sufficed to put CCDOC on notice, Plaintiff still failed to exhaust his administrative remedies because it is undisputed that he chose not to appeal this grievance, even though the CCDOC's procedures provided this option as an available remedy. [28] at ¶¶ 13, 16. For his part, Plaintiff argues that his failure to appeal should be excused because he lacked an understanding of the grievance process. [31] at 2 (noting that he needed "help from another detainee with the grievance" and that "defendant really should not be say[ing] plaintiff knew anything"). Yet it is undisputed that Plaintiff previously

9

appealed multiple grievances to exhaustion, including one that pre-dates the one at issue in this case, thus undermining the notion that Plaintiff did not understand the grievance procedures. [28] ¶ 26; [28-3] at 5. Additionally, Plaintiff testified that after submitting the grievance, a fellow inmate whom he knew by the nickname "Old School" informed him that he had to appeal the grievance, but Plaintiff ultimately chose not to follow that advice. [28-6] at 14. This evidence further undercuts the notion that Plaintiff lacked an understanding of the appeals process; to the contrary, he understood that he needed to file an appeal but chose not to do so. *See, e.g.*, *Smith v. Morrison & Mrs. Pondexter*, No. 19- CV-7713, 2021 WL 2823091, at *3 (N.D. Ill. July 7, 2021) (holding that an inmate's "failure to timely file an appeal forfeited his appeal").

Similarly, to the extent Plaintiff claims that his lack of understanding of the grievance process stems from his learning disability, that position also finds no basis in the record. Plaintiff testified that he has a diagnosed learning disability which impairs his ability to read and write. [28] at ¶ 20. But he offers no evidence that Plaintiff's learning disability prevented him from appealing his grievance. Indeed, as evidenced by the record, Plaintiff followed prompts on grievance and appeal forms such as signing and dating them in the appropriate boxes, properly exhausted multiple other grievances, and admitted that he understood—from "Old School"— that he needed to appeal the grievance at issue here.

Regardless, even if the record supported Plaintiff's claims of ignorance, the "PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of

10

administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez*, 906 F.3d at 538. The CCDOC took such reasonable steps here. Not only does it provide detainees entering CCDOC custody with an Inmate Information Handbook detailing the entire grievance procedure, it also includes instructions regarding the grievance procedures on the grievance and response forms themselves. [28] at ¶ 18. Plaintiff acknowledges that he received the handbook, *id.* ¶ 24, but opted not to read it, [28-6] at 17. Plaintiff's alleged ignorance to the grievance procedures, even if true, does not excuse his failure to exhaust. *See Latin v. Johnson*, No. 18 CV 02717, 2019 WL 5208856, at *5 (N.D. Ill. Oct. 16, 2019) (noting that simply "providing an inmate with an informational handbook outlining the grievance procedure has been deemed to be adequate notice") (citing *Russell v. Unknown Cook Cty. Sheriff's Officers*, No. 03 C 3786, 2004 WL 2997503, at *4 (N.D. Ill. Dec. 27, 2004)).

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [26] and directs the Clerk to enter a judgment of dismissal without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice"). This Court also denies Plaintiff's motions for attorney representation [35], [37], [38] as moot.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's

11

outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. See Fed. R. App. P. 24(a)(1).

Civil case terminated.

Dated: September 20, 2021

Entered:

_____
John Robert Blakey
United States District Judge